**Private and Confidential**

**18 December 2020**

**This document is important.  If you are in any doubt about any of the contents of this Term Sheet as to the action you should take, you should consult your legal, financial, tax or other professional adviser.**

**UPON THE OCCURRENCE OF A CREDIT EVENT, THE AMOUNT RECEIVABLE ON REDEMPTION OF THE NOTES WILL BE SIGNIFICANTLY LESS THAN THE ORIGINAL AMOUNT INVESTED AND IN CERTAIN CIRCUMSTANCES, ZERO.**

**Issuer and Arranger**



**Oversea-Chinese Banking Corporation Limited**

(Incorporated in Singapore)

(UEN/Company Registration Number: 193200032W)

**S$3,000,000,000**

**Structured Note Programme**

**(the Programme)**

**Credit Linked Notes (the "Notes") issued under the Programme**[1]
**Reference Number: CLN20201223-3320**

This document constitutes the Term Sheet relating to the Notes issued pursuant to the Programme and is supplemental to and must be read in conjunction with the information memorandum dated 15 April 2019, (as supplemented by a first supplemental information memorandum dated 5 July 2019), as may be amended, supplemented or replaced from time to time (the "**Information Memorandum**").

The Pricing Supplement in relation to the Notes will be issued upon the issue of the Notes and is supplemental to and must be read in conjunction with the Information Memorandum, and may specify other terms and conditions which shall, to the extent so specified or to the extent inconsistent with the Terms and Conditions (contained in the Information Memorandum), replaces or modifies the Terms and Conditions for the purposes of the Notes.

---

[1] This Term Sheet is strictly confidential and may not be reproduced, whether in part or otherwise.

This Term Sheet is provided to the investor on the understanding that (i) the investor has sufficient knowledge, experience, and professional advice to make his own evaluation of the merits and risks of a transaction of this type and (ii) he is not relying on Oversea-Chinese Banking Corporation Limited (the "**Bank**") or any of its affiliates for information, advice or recommendations.

Although the information contained herein is believed to be reliable, the Bank makes no representation as to the accuracy or completeness of any information contained herein or otherwise provided by it.  The Bank is not acting as the investor's advisor or agent. This Term Sheet does not purport to identify all risks (direct or indirect) arising from the transaction. Prior to entering into the transaction, the investor should have determined (after consultation with his own advisors as he deems fit), without reliance upon the Bank or any of its affiliates, (i) the economic risks and merits, the legal, tax, accounting or other material characterisations and consequences of the transaction, and (ii) that he is able to assume such risks.

The transaction may be subject to (i) the risk of loss of the investor's original investment amount, (ii) the risk that the Issuer will fail to perform obligations when due, and/or (iii) given that the transaction is or may be linked to the credit of one or more entities, where the deterioration of the credit of any such entities may result in the loss of the investor's original investment amount. Further, the transaction may leverage exposures to the underlying securities, currency exchange rates, interest rates, indices or the prices of certain securities or reference equities and, as a result, any changes in the value of the underlying securities, currency exchange rates, interest rates, indices or the prices of certain securities or reference equities may cause proportionally greater (positive or negative) movements in the value of the transaction, pose convexity or gamma risk, volatility risk, time decay (theta) risk, basis risk, correlation risk, amortisation risk and/or prepayment risk, any or all of which may affect the payments received or made by the investor in relation to the transaction and could result in loss to the investor's original investment amount.

The Bank, and/or any of its affiliates, may hold, or trade, or act as market-maker, in any of the underlying securities or reference assets mentioned in this Term Sheet or derivatives of such securities or assets.

**The Notes are being offered and sold pursuant to an exemption from, or in a transaction not subject to, the registration requirements of the Securities and Futures Act, Chapter 289 of Singapore.  The Notes have not been and will not be registered under the securities laws of any country, and may not be offered or sold except pursuant to an exemption from, or in a transaction not subject to, any such registration or other requirements. This Term Sheet may not be distributed and does not constitute the distribution of any information or the making of any offer or solicitation by anyone in any jurisdiction in which such distribution, offer or solicitation is not authorised or to any person to whom it is unlawful to distribute such a document or to make such an offer or solicitation.**

**MWB10 / 60**

Exhibit "30"
Page 1 of 19

Terms used in this Term Sheet not otherwise defined herein, shall have the same meaning as ascribed to it in the Information Memorandum.

*Brief description of the Notes*

The Notes are Single Name Credit Linked Notes.

**Upon the occurrence of a Credit Event, investors may suffer significant losses and may lose their entire investment**. **It is intended that, upon the occurrence of a Credit Event, the Notes will be redeemed by way of cash settlement at the Credit Event Redemption Amount (which could be zero) as determined by the Calculation Agent. Certain considerations and risks associated with cash settlement are raised below and in the Information Memorandum**.

Further selected risk factors relating to the Notes are set out below under the section entitled "*Selected Risk Factors*" and in the Information Memorandum.

*Summary of the material terms of the Notes*

The following is a summary of the material terms of the Notes, full details of which will be set out in the Pricing Supplement, when issued, of the Notes. In the event of any conflict between this Term Sheet and Pricing Supplement (as read together with the Information Memorandum), the Pricing Supplement (as read together with the Information Memorandum) will prevail.

| | |
|---|---|
| **Issuer:** | Oversea-Chinese Banking Corporation Limited. |
| **Calculation Agent:** | Oversea-Chinese Banking Corporation Limited, 65 Chulia Street, #16-00 OCBC Centre, Singapore 049513. |
| **Series Number** | 001 |
| **Tranche Number** | 001 |
| **Specified Currency:** | United States Dollars (**USD**), the lawful currency of the United States of America. |
| | Where an amount to be paid in the Settlement Currency is denominated in a currency other than the Settlement Currency, such amount will be converted to the Settlement Currency at a rate determined by the Calculation Agent in its sole and absolute discretion. |
| **Settlement Currency** | USD |
| **Principal Financial Centre:** | In relation to USD, New York. |
| **Status of the Notes:** | The Notes constitute direct, unconditional, senior and unsecured obligations of the Issuer and rank *pari passu* with all other outstanding present and future direct, unsecured and unsubordinated obligations of the Issuer, save for such obligations as may be preferred by provisions of law that are both mandatory and of general application. |
| **Aggregate Principal Amount of the Notes:** | USD 3,700,000 |
| | The Aggregate Principal Amount of the Notes shall be subject to amortisation from time to time pursuant to any partial redemption of the Notes under the "*Mandatory Early Redemption by the Issuer*" provisions set out below. |

2

**MWB10 / 61**

**Issue Price:**

In respect of each Note, 100.00 per cent. of the Specified Denomination.

**Specified Denomination(s):**

In respect of each Note, USD 100,000

In the event the Aggregate Principal Amount of the Notes is reduced pursuant to any partial redemption of the Notes under the "*Mandatory Early Redemption by the Issuer*" provisions set out below, the Specified Denomination of the Notes shall accordingly be reduced proportionately such that the number of Notes outstanding shall remain unchanged from the Issue Date.

**Trade Date:**

18 December 2020.

**Effective Date:**

18 December 2020, being the effective date for the commencement of the determination of the occurrence of a Credit Event, subject to the election made in respect of the Successor Event Backstop Date and the Credit Event Backstop Date.

**Issue Date:**

23 December 2020

**Interest Commencement Date:**

Issue Date.

**Credit Observation Period End Date:**

20 December 2021 ("**Scheduled Credit Observation Period End Date**"). The Credit Observation Period End Date is the scheduled final date for determining the occurrence of a Credit Event. If the Reference Obligation Final Maturity Date is extended for whatsoever reason beyond the Scheduled Credit Observation Period End Date, the Credit Observation Period End Date shall be extended accordingly. However, it is without prejudice to the Observation Cut-off Date and the provisions relating thereto the effect of which may be to extend the Maturity Date.

**Maturity Date:**

03 January 2022, being a date falling no later than 10 Payment Days after the Credit Observation Period End Date (the "**Scheduled Maturity Date**"), provided that, if a Credit Event occurs and the Conditions to Settlement are satisfied during the Notice Delivery Period, the Maturity Date shall be the Credit Event Redemption Date. The Maturity Date in respect of the Notes may be postponed if a potential Credit Event has, or may have, occurred or is awaiting determination as of the Credit Observation Period End Date, as described in more detail in the Information Memorandum (in particular Condition 7(k) of the Terms and Conditions of the Notes).

**Interest Basis:**

Others (further particulars set out below)

**Redemption Basis:**

Credit Linked.

**Form of Notes:**

Registered Notes.

3

**MWB10 / 62**

Exhibit "30"
Page 3 of 19

| | |
|---|---|
| **Put/Call Options:** | Issuer Call. |
| | Further particulars specified in the provisions relating to "Optional Early Redemption by the Issuer" below. |
| **Listing:** | None. |
| **Method of distribution** | Issue to Conduit Securities Pte Ltd, acting in its capacity as distributor of the Notes. |
| **Business Day Convention:** | Modified Following Business Day Convention. |
| **Business Centre(s) for the purposes of the Business Day definition in Condition 3(h) (*Definitions*):** | New York, Singapore. |

**PROVISIONS RELATING TO INTEREST**

| | |
|---|---|
| **i) Rate(s) of Interest:** | The Rate of Interest in respect of each Interest Period shall be determined based on the method of calculating interest as set out in paragraph (vi)(*Other Terms relating to the Method of Calculating Interest for the Notes*) below. |
| | For avoidance of doubt, the expected Rate of Interest in respect of each Interest Period set out in Appendix A of this document is for reference only and the actual Rate of Interest in respect of each Interest Period shall be as determined based on the foregoing paragraph. |
| **ii) Interest Period End Date:** | Each date specified under the column for "*Interest Period End Date*" in Appendix A of this document. |
| **iii) Interest Payment Date(s):** | In respect of each Interest Period, 10 Business Days (or such other number of Business Days as the Issuer may determine in its sole and absolute discretion) after the Interest Period End Date of such Interest Period, provided that a Mandatory Early Redemption Event, an Optional Early Redemption by the Issuer and a Credit Event has not occurred. |
| | For the avoidance of doubt, in respect of each Note and each Interest Payment Date, the obligation of the Issuer to pay the Interest Amount is contingent upon, and subject to the condition precedent of, the Issuer having actually received the full interest payment on the relevant scheduled payment date in respect of the Reference Obligation (as determined by the Calculation Agent in its sole and absolute discretion). If the Issuer does not actually receive such interest payment in full on the relevant scheduled payment date in respect of the Reference Obligation, the Issuer has no obligation to make payment of the corresponding Interest Amount under the Notes. If such interest payment in respect of the Reference Obligation is received by the Issuer after its scheduled date for payment, the Issuer may, but is not obliged to, by notice to the Noteholders, postpone the corresponding Interest Payment Date under the Notes to such later date as the Issuer may, in its sole and absolute discretion determine. |
| | Subject to the Issuer having actually received the full |

4

**MWB10 / 63**

Exhibit "30"
Page 4 of 19

interest payment on the relevant scheduled payment date in respect of the Reference Obligation and provided that (i) no Mandatory Early Redemption Event, Optional Early Redemption by the Issuer or Credit Event has occurred and (ii) the Notes have not been early redeemed, purchased and/or cancelled for any reason, the Interest Payment Dates are expected to be as set out in Appendix A of this document below.

**iv) Day Count Fraction:**                      Not Applicable.

**v) Accrual of Interest upon the occurrence of a**   Not Applicable.
**Mandatory Early Redemption Event, Optional Early**
**Redemption by the Issuer or Credit Event:**

Notwithstanding the terms and conditions of the Notes, upon the occurrence of a Mandatory Early Redemption Event that results or will result in an early redemption of the Notes in full, an Optional Early Redemption by the Issuer or a Credit Event, each Note shall cease to bear interest from the Interest Period End Date immediately preceding the occurrence of such Mandatory Early Redemption Event, Optional Early Redemption by the Issuer or Credit Event (as the case may be) and no further Interest Amount shall be payable by the Issuer thereafter.

For avoidance of doubt, there shall be no additional interest payable to the investor in the event that the Maturity Date is extended pursuant to the "Maturity Date Extension" provisions in the terms and conditions of the Notes.

**vi) Other Terms relating to the Method of Calculating**   In relation to an Interest Payment Date, the Interest Amount
**Interest for the Notes:**

payable in respect of the outstanding Notes shall be an amount (if any) converted into the Settlement Currency determined by the Calculation Agent as being equivalent to the amount of interest (which, for the avoidance of doubt, will disregard amounts taken into account in previous determinations of Interest Amount) in respect of the Reference Obligation actually received and retained by the Issuer, after deduction of all Transaction Costs and Taxes, up to (and including) the date which is 10 Business Days (or such other number of Business Days as the Issuer may determine in its sole and absolute discretion) before that Interest Payment Date less the Margin (if any) (multiplied by the day count fraction under the terms of the Reference Obligation applicable to the relevant Interest Period) and less any amounts, costs or expenses due and payable to the Reference Obligation Holder under the Reference Obligation which have not been paid, provided however that, such amount, if negative, shall be deemed to be zero.

For the purpose of the Notes:

"**Margin**" means 0.00 per cent. per annum of the outstanding principal amount of the Reference Obligation (multiplied by the day count fraction under the terms of the Reference Obligation applicable to the relevant Interest Period).

"**Reference Obligation Holder**" means the holder for the time being of the Reference Obligation.

5

**MWB10 / 64**

Exhibit "30"
Page 5 of 19

**PROVISIONS RELATING TO REDEMPTION**

| | |
|---|---|
| **Final Redemption Amount of the outstanding Notes, including the method if any, of calculating the same:** | In the absence of any Credit Event, Mandatory Early Redemption by the Issuer and Optional Early Redemption by the Issuer, the Final Redemption Amount for each Note shall be 100% of the Specified Denomination. |
| **Failure to acquire, settle or receive delivery of the Reference Obligation by Issue Date** | If the Issuer fails to acquire, settle or receive delivery of the Reference Obligation by the Reference Obligation Issue Date (as defined below) (whether due to unforeseen market conditions, default of the Reference Entity or for any other reasons) (a "**Reference Obligation Delivery Failure Event**"), the Issuer shall have the sole and absolute discretion, at any time, to elect to early redeem the Notes by giving notice (such notice a "**Delivery Failure Early Redemption Notice**") to the Noteholder(s), specifying that a Reference Obligation Delivery Failure Event has occurred and the date scheduled for early redemption of the Notes (such date, the "**Delivery Failure Early Redemption Date**"). |
| | If the Issuer elects to early redeem the Notes in accordance with the foregoing, each Note will be redeemed, in whole and not in part, by the Issuer on the Delivery Failure Early Redemption Date by the return of the Issue Price actually received by the Issuer in respect of each Note (less any Hedging Costs and any other costs, fees, expenses, duties and/or taxes that may be incurred by the Issuer in connection with the issuance and/or early redemption of the Notes, on a *pro rata* basis), and without any interest accruing thereto. The Issuer shall not have any further obligations in respect of the Notes upon such early redemption, in whole and not in part, following the Reference Obligation Delivery Failure Event. |
| **Mandatory Early Redemption by the Issuer:** | If the outstanding principal amount of the Reference Obligation is prepaid, redeemed or sold in whole or in part prior to the Reference Obligation Final Maturity Date, the whole or the proportionate part of each Note (as the case may be) shall be redeemed by the Issuer by giving not less than 2 Business Days' notice (or such other number of Business Days of prior notice as the Issuer may determine in its sole and absolute discretion) to the Noteholders specifying the date scheduled for early redemption of the Notes (such date, the "**Mandatory Early Redemption Date**") by payment on the Mandatory Early Redemption Date of the Mandatory Early Redemption Amount or the proportionate part thereof (as the case may be). |
| | For the avoidance of doubt, in the event that the Notes are redeemed in part, the Aggregate Principal Amount of the Notes will be amortised accordingly, and the Calculation Agent may, but is not obliged to, make the relevant adjustment to the terms of the Notes as the Calculation Agent determines appropriate to account for the economic effect of such partial redemption on the Notes and determine the effective date of such adjustment. |
| **Mandatory Early Redemption Amount:** | An amount (if any) converted into the Settlement Currency determined by the Calculation Agent as being equivalent to the amount of proceeds (which, for the avoidance of doubt, will disregard amounts taken into |

6

**MWB10 / 65**

Exhibit "30"
Page 6 of 19

account in previous determinations of Mandatory Early Redemption Amount) in respect of the prepayment or sale (as the case may be) of the outstanding principal amount of the Reference Obligation (in whole or in part) by the Reference Entity actually received and retained by the Issuer (or, as the case may be, the Reference Obligation Holder), after deduction of all Transaction Costs and Taxes, up to (and including) the date which is 5 Business Days (or such other number of Business Days as the Issuer may determine in its sole and absolute discretion) before the Mandatory Early Redemption Date, and less Hedging Costs and any amounts, costs or expenses due and payable to the Issuer (or, as the case may be, the Reference Obligation Holder) under the Reference Obligation which have not been paid, provided, however, that, such amount, if negative, shall be deemed to be zero.

**Transaction Costs and Taxes:**    Any costs, expenses, duties, taxes, levies, margin, registration fees, brokerage charges, custodian fees, or other charges whatsoever withheld from or paid or otherwise incurred by or on behalf of the Issuer as a result of, or in connection with, the Issuer being the direct or indirect holder of the Reference Obligation, the acquisition, disposal or dealings by the Issuer in the Reference Obligation and/or the receipt or recovery by the Issuer of any interest, principal or other payment or distribution (whether in the form of cash, securities or otherwise) paid or made by or on behalf of the Reference Entity in respect of the Reference Obligation.

**Hedging Costs:**    The losses, expenses and costs (if any) to the Issuer of unwinding, terminating, liquidating, adjusting, obtaining, replacing or re-establishing any underlying or related hedging arrangements (including but not limited to any options or selling or otherwise realising any instruments of any type whatsoever which the Issuer may hold as part of such hedging arrangements), all as calculated by the Calculation Agent in good faith acting in a commercially reasonable manner.

**Optional Early Redemption by the Issuer:**    The Issuer may, by giving not less than 5 Business Days' notice (or such other number of Business Days of prior notice as the Issuer may determine in its sole and absolute discretion) to the Noteholder (which notice shall specify the date scheduled for early redemption of the Notes, such date, the "**Optional Early Redemption Date**") redeem the Notes in whole (but not in part) by payment of the Optional Early Redemption Amount on the Optional Early Redemption Date.

**Optional Early Redemption Amount:**    An amount (if any) determined by the Calculation Agent as being equivalent to the amount of proceeds in respect of the prepayment, sale, disposal or liquidation (as the case may be) of the outstanding principal amount of the Reference Obligation in whole (but not in part) actually received and retained by the Issuer, after deduction of all Transaction Costs and Taxes, up to (and including) the date which is 5 Business Days before the Optional Early Redemption Date, and less Hedging Costs (defined below) and any amounts, costs or expenses due and payable to the Issuer (or, as the case may be, the Reference Obligation Holder) under the Reference Obligation which have not

7

been paid, provided, however, that, such amount, if negative, shall be deemed to be zero.

| | |
|---|---|
| **Early Redemption Amount(s) for each Note payable on redemption for taxation reasons, on Event of Default or any other Condition:** | The Early Redemption Amount for each Note of the Specified Denomination will be its then current market value as determined by the Calculation Agent. |

## CREDIT LINKED NOTE PROVISIONS

| | |
|---|---|
| **Type of Notes:** | Single Name Credit Linked Notes. |
| **Calculation Agent responsible for making calculations and determinations pursuant to Condition 7 (Credit Linked Notes):** | Oversea-Chinese Banking Corporation Limited |
| | In connection with this, Calculation Agent Determination will apply in respect of Succession Events and, as a result the Calculation Agent shall not be bound by any determination of a Determinations Committee in respect of making any adjustments or determinations following the occurrence of a Succession Event. |
| **Calculation Agent City:** | Singapore. |
| **Reference Entity:** | ARIA Commodity Finance Funds (K) SPC on behalf of and for the account of ARIA CFF (K1) Fund Segregated Portfolio |
| **Transaction Type(s):** | Not applicable. |
| **Successor Event Backstop Date:** | Applicable. |
| **Reference Obligation(s):** | The USD Notes with a principal amount of USD 3,700,000 issued by ARIA Commodity Finance Funds (K) SPC on behalf of and for the account of ARIA CFF (K1) Fund Segregated Portfolio on 28 December 2020 ("**Reference Obligation Issue Date**") pursuant to the USD 100,000,000 (one hundred million United States dollars) Multi-Currency Note Deed Poll dated 15 April 2020 with the Reference Entity as Issuer, as may be amended or supplemented from time to time. |
| | The final maturity date of the Reference Obligation is 20 December 2021 ("**Reference Obligation Final Maturity Date**"). |
| | Please refer to Appendix B of this Term Sheet for further details on the Reference Entity and the Reference Obligation. |
| **All Guarantees:** | Not Applicable. |
| **Credit Events:** | Bankruptcy |
| | Failure to Pay |
| | Grace Period Extension: Applicable |
| | Grace Period: Two (2) Business Days |
| | Obligation Default |

8

**MWB10 / 67**

Repudiation/Moratorium

Restructuring

Multiple Holder Obligation: Not Applicable

The occurrence of any of the Risk Events as determined at the sole and absolute discretion of the Calculation Agent.

**Risk Events:**    Each of the following event shall constitute a Risk Event:

(a)    Reference Issuer Default Event;

(b)    Ownership Restriction Event;

(c)    Banking Event;

(d)    Inconvertibility Event;

(e)    Non-Transferability Event;

(f)    Nationalization Event;

(g)    Market Disruption Event; and

(h)    Force Majeure Event.

Where:

**Reference Issuer Default Event** means a default, event of default or other similar condition or event (however described) under the terms and conditions of the Reference Assets.

**Reference Issuer** means the Reference Entity and the Reference Jurisdiction.

**Reference Assets** means the Reference Obligation and any securities issued by or on behalf of the Reference Jurisdiction.

**Reference Jurisdiction** means the jurisdiction of organization of a Reference Entity.

**Reference Investor** means any member of a class of persons that includes the Issuer or any of its Affiliates (including, without limitation any trust, special purpose vehicle or account through which the Issuer or any of its Affiliates may hold Reference Assets or obligations of the Reference Issuer, as the case may be, in the Reference Jurisdiction). For the purposes of the foregoing, (i) "**Affiliate**" means in respect of any designated person, any person that directly or indirectly controls or is controlled by or is under common control with such designated person and (ii) "**control**" means (including with correlative meanings, the terms controlled by and under common control with), as used with respect to any person, shall mean the possession, directly, or indirectly, of the power to direct or cause the direction of the management and policies of such person, whether through the ownership of voting securities or by contract or otherwise.

"**Reference Currency**" means the lawful currency of the Reference Jurisdiction.

"**Ownership Restriction Event**" means any event

9

**MWB10 / 68**

(including but not limited to changes in the regulations of, or the making of any official statement by, any Governmental Authority) that causes it to be illegal, impossible or impracticable for any Reference Investor to purchase, hold, sell or transfer any Reference Asset (or that adversely affects or could adversely affect, the ability of such an investor to purchase, hold, sell or transfer any Reference Assets).

"**Governmental Authority**" means any de facto or de jure government (or any agency, instrumentality, ministry or department thereof), court, tribunal, administrative or other governmental authority or any other entity (private or public) charged with the regulation of the financial markets (including the central bank) of or in the Reference Jurisdiction.

"**Banking Event**" means a declaration of a banking moratorium or any suspension, waiver, deferral or repudiation of payments by banks with respect to indebtedness or deposits in the Reference Jurisdiction; the imposition by any Governmental Authority of any moratorium on, waiver, deferral, repudiation or required rescheduling of, or the required approval of, the payment of any amount of principal, interest or other amount of indebtedness of banks, or restriction on withdrawal of any deposited funds from banks, in the Reference Jurisdiction; any general disruption in the bank payments system in the Reference Jurisdiction which prevents banks from receiving or paying in the Reference Currency or the Settlement Currency; or any condition created by or resulting from any action or failure to act by a Governmental Authority which, in the opinion of the Calculation Agent, has the effect of prohibiting or restricting the ability of a Reference Investor to hold Reference Currency or Reference Assets in the Reference Jurisdiction.

"**Inconvertibility Event**" means the occurrence of any event or existence of any condition (including without limitation, any such event or condition that occurs as a result of the enactment, promulgation, execution, ratification, interpretation or application of, or any change in or amendment to, any law, rule or regulation by any Governmental Authority) that generally makes it impossible, illegal or impracticable for a Reference Investor, or materially hinders its ability, (i) to convert the Reference Currency into the Settlement Currency through customary legal channels; or (ii) to effect currency transactions on terms as favourable as those available to residents of the Reference Jurisdiction.

"**Non-Transferability Event**" means the occurrence of any event or existence of any condition (including without limitation, any such event or condition that occurs as a result of the enactment, promulgation, execution, ratification, interpretation or application of, or any change in or amendment to, any law, rule or regulation by any Governmental Authority) that generally makes it impossible, illegal or impracticable for a Reference Investor, or materially hinders its ability, to transfer any funds, securities or other assets (including but not limited to the transfer of any Reference Asset or the proceeds

10

thereof) (i) from accounts inside the Reference Jurisdiction to accounts outside the Reference Jurisdiction; or (ii) between accounts inside the Reference Jurisdiction.

"**Nationalization Event**" means the expropriation, confiscation, freezing, requisition, nationalization or other action by any Governmental Authority, which directly or indirectly deprives any Reference Investor of any of its assets (including rights to receive payments) in the Reference Jurisdiction.

"**Market Disruption Event**" means (i) the failure or suspension of normal trading on any recognized securities, futures or other exchange on which the Reference Assets or futures thereon are traded (if any); or (ii) any Reference Asset becoming ineligible for clearance or settlement through the principal clearing system for such asset.

"**Force Majeure Event**" means any conditions arising outside of a Reference Investor's reasonable control, including, but not limited to, fire, civil disobedience, riots, rebellions, storms, acts of God and similar occurrences, but not including other conditions and events that are set forth elsewhere in the Conditions.

"**Conditions**" means the terms and conditions of the Notes.

| | |
|---|---|
| **Default Requirement:** | USD 100,000 or its equivalent as calculated by the Calculation Agent in the relevant Obligation Currency. |
| **Payment Requirement:** | USD 100,000 or its equivalent as calculated by the Calculation Agent in the relevant Obligation Currency. |
| **Credit Event Backstop Date:** | Applicable. |
| **Conditions to Settlement:** | Credit Event Notice. |
| **Obligation Category:** | Payment. |
| **Obligation Characteristics:** | Not Subordinated |
| | Specified Currency: *USD* |
| | Not Sovereign Lender |
| **Additional Obligation(s):** | Not Applicable. |
| **Excluded Obligation(s):** | Not Applicable. |
| **Settlement Method:** | Cash Settlement. |
| **Merger Event:** | Applicable. |
| **Hedging Costs:** | Applicable. |

*Terms relating to Cash Settlement*

11

MWB10 / 70

**Credit Event Redemption Amount:**

In respect of each Note, an amount calculated by the Calculation Agent equal to:

$(A \times B \times C) - D - E$

**A** is the Specified Denomination;
**B** is the Applicable Percentage, which is 100 per cent;
**C** is the Final Price;
**D** is Hedging Costs (if specified as applicable); and
**E** is the EDD Adjustment Amount (if applicable), provided that the Credit Event Redemption Amount shall not be less than zero.

For the purposes above,

**"Final Price"** means the price of the Reference Obligation expressed as a percentage (which could be zero), as determined by the Calculation Agent in good faith and in a commercially reasonable manner.

For the avoidance of doubt and without limiting the right of the Calculation Agent to determine the price of the Reference Obligation as set forth in the foregoing:

(a)    The Calculation Agent may make such determination on the Final Price with reference to the amount in cash actually received by the Issuer arising from the redemption or disposal of the Reference Obligation.

(b)    If the Calculation Agent determines that:

(i)    the Issuer has not received any proceeds from the Reference Entity following a notice to the Reference Entity of the occurrence of an Event of Default (as defined under the terms of the Reference Obligation) or a notice declaring all amounts payable under the Reference Obligation to be due and payable;

or

(ii)    the Issuer is unable for any reason to dispose of, sell or liquidate the Reference Obligation,

(in each case) by the last day of the Credit Event Redemption Period, the Final Price may be determined by the Calculation Agent to be zero.

For the purpose of sub-paragraph (b)(ii) above and for the avoidance of doubt, a refusal or failure by the Reference Entity to effect and complete a redemption or repurchase of the Reference Obligation in accordance with its terms (notwithstanding a request from the Issuer for it to do so) shall be conclusive evidence of the Issuer's inability to dispose of, sell or liquidate the Reference Obligation.

12

**MWB10 / 71**

**"EDD Adjustment Amount"** means an amount in the Specified Currency determined by the Calculation Agent in respect of the Specified Denomination of each Note equal to each amount of interest payable in respect of the Specified Denomination of each Note that would not have been paid (if any) on any Interest Payment Date to the Noteholder had the earlier Event Determination Date been the date originally determined as the Event Determination Date.

| | |
|---|---|
| **Credit Event Redemption Date:** | The 5th Business Day following the last day of the Credit Event Redemption Period, *provided that*, if the Issuer actually receives the proceeds from the liquidation, redemption and/or disposal of the Deliverable Obligation in full to enable the determination of the Credit Event Redemption Amount (in accordance with the '*Credit Event Redemption Amount*' provisions above) on or prior to the last day of the Credit Event Redemption Period, the Credit Event Redemption Date shall be 5 Business Days following such receipt. |

If the Credit Event Redemption Date determined in accordance with the foregoing falls on a day which is not a Business Day, such date shall be postponed to the next day which is a Business Day.
For the purpose of the Notes:

"**Credit Event Redemption Period**" means the period of 180 days (or such other number of days as determined by the Issuer in its sole and absolute discretion and notified to the Noteholders) after the date the Conditions to Settlement are satisfied during the Notice Delivery Period.

"**Notice Delivery Period"** means the period from and including the Effective Date to and including the date that is fourteen calendar days after (a) the Reference Obligation Final Maturity Date, or (b) if a Potential Failure to Pay has occurred on or prior to the Reference Obligation Final Maturity Date, the Extension Date, which is (if such date would otherwise fall after the Reference Obligation Final Maturity Date) the date that is the number of days in the Grace Period after the date on which a Potential Failure to Pay has occurred.

## GENERAL PROVISIONS APPLICABLE TO THE NOTES

| | |
|---|---|
| **Notes to be represented on issue by a Global Note:** | Applicable. Registered Global Note |
| **Provisions for exchange of Temporary Global Notes:** | Not Applicable. |
| **Provisions for exchange of Permanent Global Notes:** | Not Applicable. |
| **Financial Centre(s) for the purposes of the Payment Day definition in Condition 4(f) (Payments – Payment Day) or other special provisions relating to Payment** | New York, Singapore. |

13

**MWB10 / 72**

**Days**

**Talons for future Coupons or Receipts to be attached to Notes in definitive form (and dates on which such talons mature):** No

**Redenomination applicable:** Redenomination not applicable.

**Ratings:** The Notes are not separately rated.

**Governing law:** Singapore law.

**TAXATION**

**(i)    Notes subject to Section 871(m) Withholding:** No

**(ii)   Other:** Condition 12(a) (*No Gross-up*) will apply.

**DISTRIBUTION**

**Name of relevant Dealer:** Oversea-Chinese Banking Corporation Limited

**Name of relevant Distributor:** Conduit Securities Pte Ltd

**Whether TEFRA D or TEFRA C rules applicable or TEFRA rules not applicable:** TEFRA not applicable.

**Additional selling restrictions:** As set out in the Information Memorandum.

**OPERATIONAL INFORMATION**

**Notes to be held outside any Clearing Systems or specify any Clearing System(s) other than CDP or Euroclear and Clearstream, Luxembourg and the relevant identification number(s):** Not Applicable

**Delivery:** Delivery against payment.

**ISIN** XS2277563735.

**Common Code** 227756373.

14

**MWB10 / 73**

Exhibit "30"
Page 14 of 19

This Term Sheet does not constitute any offer or solicitation of offers to sell or buy any investment. Any purchase of or application for the Notes pursuant to the proposed offering of the Notes should only be made on the basis of information contained in the Information Memorandum and supplementary information memoranda, if any. Neither the Information Memorandum nor this Term Sheet has been lodged with, or registered by, the Monetary Authority of Singapore under Division I of Part XIII of the Securities and Futures Act, Chapter 289 of Singapore (the SFA).

Any offer of the Notes is only made to (i) an institutional investor (defined in the SFA) pursuant to Section 274 of the SFA, and/or (ii) a relevant person (as defined in Section 275(2) of the SFA) pursuant to Section 275(1) of the SFA, or any person pursuant to Section 275(1A) of the SFA, and in accordance with the conditions specified in Section 275 of the SFA (Eligible Investors). Accordingly, if you are not an Eligible Investor, you are not eligible to invest in this Note.

The following exemptions under the Financial Advisers Regulations apply to Oversea-Chinese Banking Corporation Limited (the Issuer) and its representatives only in the event that the Issuer or its representatives provides any financial advisory service to the investor in connection with the Notes: (1) Regulation 33(1) - Exemption from complying with Section 25 of the Financial Advisers Act, Chapter 110 of Singapore (the FAA) when making a recommendation in respect of (a) any designated investment product (within the meaning of Section 25(6) of the FAA) to an accredited investor; or (b) any designated investment product (within the meaning of Section 25(6) of the FAA), that is a capital markets product, to an expert investor; (2) Regulation 34(1) - Exemption from complying with Section 27 of the FAA when making a recommendation in respect of (a) any investment product to an accredited investor; (b) any capital markets product to an expert investor or; (c) any Government securities; and (3) Regulation 35(1) – Exemption from complying with Section 36 of the FAA when sending a circular or other similar written communication in which a recommendation is made in respect of (a) any specified product to an expert investor; (b) any specified product to an accredited investor; or (c) any Government securities.

The acceptance of this offer is on the basis of, and subject to, the Issuer's "Structured Products Terms and Conditions", where applicable to the investor. Corporate investors accepting this offer shall be deemed to have agreed to such terms and conditions and shall accordingly acknowledge and confirm their agreement in the Confirmation Statement which follows this Term Sheet. Investors are advised to read the Information Memorandum and supplementary information memorand(um/a), if any, relating to this offer and the Issuer's "Structured Products Terms and Conditions", where applicable, prior to accepting the terms set out in this Term Sheet.

Pursuant to Section 309B(1) of the SFA, the Notes issued pursuant to the Programme, unless otherwise stated, shall be capital markets products other than prescribed capital markets products (as defined in the Securities and Futures (Capital Markets Products) Regulations 2018) and Specified Investment Products (as defined in MAS Notice SFA 04-N12: Notice on the Sale of Investment Products and MAS Notice FAA-N16: Notice on Recommendations on Investment Products).

**Selected Risk Factors**

Prospective investors must review and understand the risk factors set out in the Information Memorandum in the section entitled "*Risk Factors*". Below are certain factors specifically applicable to the Notes.

***Risks Relating to Notes***

*Optional early redemption by the Issuer*

The Issuer has the option of redeeming the Notes early by payment of the Optional Early Redemption Amount.

The Issuer may, upon the Optional Early Redemption Date redeem the Notes in whole (but not in part) by payment of the Optional Early Redemption Amount on the Optional Early Redemption Date.

*No early redemption by the investor*

The investor is not entitled to redeem the Notes early. Any early redemption shall be at the absolute discretion of the Issuer and on such terms as the Issuer may then determine.

*General risk warning*

The Notes are not conventional debt securities as they are linked to the performance and creditworthiness of the specified Reference Entity and certain obligations of such Reference Entity. Prospective investors should therefore



understand that the payment of principal and/or interest under the Notes will be dependent upon the performance and creditworthiness of the Reference Entity and the value of such obligations. If a Credit Event occurs under the Notes, the Issuer may make payment of the Credit Event Redemption Amount to the Noteholder (provided certain conditions are met, as summarised below) and the Credit Event Redemption Amount may, in certain circumstances, be zero.

*Suitability of Notes*

A position and an investment in the Notes involves substantial risks including market risk, liquidity risk, and the risk that the Issuer will be unable to satisfy its obligations under the Notes. This Term Sheet is not, and does not purport to be, investment advice.

Prospective investors should ensure that they understand the nature of all these risks before making a decision to invest in Notes. Any prospective investor should consider carefully whether the Notes are suitable for him in light of his experience, objectives, financial position and other relevant circumstances. A prospective investor should conduct such investigation and analysis regarding the Notes as he deems appropriate. Any prospective investor should make an investment only after he has determined that such investment is suitable for his circumstances, risk profile, financial position and investment objectives. The Notes are not suitable for inexperienced investors. If a prospective investor is in any doubt, he must seek independent professional advice.

*Market and investment risk*

An investment in the Notes is subject to market fluctuations and the risks inherent in all investments. An investor's holding of Notes is subject to investment risk, including interest rate risk, exchange rate risk, liquidity risk, possible delays in repayment and loss of income and principal invested. The Notes are subject to the credit risk of the Issuer and, where applicable, the credit risk of the Reference Entity. Accordingly, an investor in the Notes may lose some or substantially all of the amounts that he has invested in the Notes, even on maturity.

***Risks specific to Credit Linked Notes***

*Credit Linked Notes*

Credit Linked Notes differ from ordinary debt securities in that the amount of principal and/or interest payable by the Issuer is dependent on (amongst other things) whether a Credit Event has occurred in respect of the relevant Reference Entity/Entities.

It is not necessary for the Issuer to suffer any loss in order for an event to constitute a Credit Event. Payments upon redemption (whether at maturity or otherwise) will depend upon, among other things, the credit performance of the relevant Reference Entity/Entities. The occurrence of a Credit Event in relation to the relevant Reference Entity/Entities could result in the loss of all or a substantial portion of the investor's investment in the Notes.

Examples of Credit Events include Bankruptcy, Failure to Pay, Restructuring, Obligation Acceleration, Obligation Default, and Repudiation/Moratorium. Each prospective investor should review carefully the applicable Credit Events and their definitions under each prospective Credit Linked Note and independently evaluate their appropriateness to his objective for investing in Credit Linked Notes. The likelihood of a Credit Event occurring in respect of any Reference Entity will generally fluctuate with, among other things, the financial condition and other characteristics of such Reference Entity, general economic conditions, the condition of certain financial markets, political events, developments or trends in any particular industry and changes in prevailing interest rates.

There is no guarantee, protection or assurance for investors of the Notes in respect of the credit or performance of the Reference Entity, Reference Obligation or Obligations. None of the Issuer, its Directors or any of its affiliates makes any representation as to the future performance of the Notes either in absolute terms or relative to other investments.

*Valuation Factors*

Factors that may influence the value of the Notes include, without limitation:

(a)      the actual or perceived creditworthiness and credit ratings of the Reference Entity;

(b)      the degree of correlation between the creditworthiness of the Reference Entity and the Issuer;

(c)      expected rates of recovery on obligations of the Reference Entity;



**MWB10 / 75**

(d)      actions of a Reference Entity and its principal creditors;

(e)      the nature of the Reference Entity's outstanding indebtedness, including its maturity and subordination structure and any guarantees that the Reference Entity has provided to other entities;

(f)      the contractually specified credit-related events with respect to a Reference Entity that may trigger the occurrence of an Event Determination Date;

(g)      market liquidity which affects the value of the Notes through its effect on bid-ask spreads and the ability of market participants to hedge exposures;

(h)      the time remaining to the maturity of the Notes; and

(i)      economic, financial, political and regulatory or judicial events or conditions that affect the Reference Entity or its outstanding obligations, or the market for credit derivative transactions or related financial markets, including credit spreads in the market, market liquidity of credit derivative transactions relative to the liquidity of related cash instruments or related credit derivatives, and liquidity for secondary assignments of credit derivatives generally.

*Determination of occurrence of Credit Event*

The determination as to whether a Credit Event has occurred will be made on the basis set out in the Terms and Conditions of the Notes and in this Term Sheet and without regard to any related determination by a Reference Entity or any action taken, omitted to be taken or suffered to be taken by any other person including, without limitation, any creditor of a Reference Entity. **The occurrence of a Credit Event could result in material losses, including the loss of the entire amount (or a substantial portion) of the original amount invested in the Notes.**

*Risk Events*

The Risk Events, which are included in the Credit Events for the purposes of the Notes, while not part of, and while not defined under, the Credit Event definitions in the 2014 ISDA Credit Derivatives Definitions, still constitute a Credit Event for the purposes of the Notes.

Please refer to the trade details above for the meaning of the various Risk Events. You should note that Oversea-Chinese Banking Corporation Limited, acting as Calculation Agent, has the sole and absolute discretion to determine as to when and whether to declare a Credit Event upon the occurrence of any of the Risk Events.

*No proprietary or security interest in any Reference Obligation or claim against any Reference Entity*

Investors will have no proprietary interest or security interest in any Reference Obligation and will have no claim against any Reference Entity.

*Provision of information*

None of the Issuer, its Directors, the Agents (as defined in the Agency Agreement) or any of their affiliates makes any representation as to the credit quality, business, financial condition, prospects, creditworthiness or status of affairs of any Reference Entity or any Reference Obligation. Any such persons may have acquired, or during the term of the Notes, may acquire, non-public information with respect to any Reference Entity or any Reference Obligation that is or may be material in the context of the Notes. None of such persons is under any obligation to make available any information relating to, or keep under review on the investor's behalf, the credit quality, business, financial condition, prospects, creditworthiness or status of affairs of any Reference Entity or any Reference Obligation or conduct any investigation or due diligence into any Reference Entity or any Reference Obligation.

*Due diligence by the investor*

It is assumed that each prospective investor has made all investigations or due diligence of any Reference Entity and any Reference Obligation, including without limitation, as to the credit quality, business, financial condition, prospects, creditworthiness or status of affairs as he considers necessary or desirable.

*Interest accrual and payments*



Interest will stop accruing in respect of the Notes on the earlier to occur of (A) the Scheduled Credit Observation Period End Date, and (B) the Interest Payment Date immediately preceding the Event Determination Date (or, if the Event Determination Date is an Interest Payment Date, such Interest Payment Date)/Interest will stop accruing in respect of the Notes on the earlier to occur of (A) the Scheduled Credit Observation Period End Date, and (B) the Event Determination Date.

*Redemption of the Notes as a result of potential Credit Events and Credit Events*

The Maturity Date may be extended beyond the Scheduled Maturity Date where a potential Credit Event has, or may have, occurred or is awaiting determination as at the Scheduled Credit Observation Period End Date. **Accordingly, receipt of any redemption amount by an investor will be delayed in such circumstances**.

If an Event Determination Date occurs, the Notes will be redeemed and in such circumstances such redemption may occur significantly earlier than the Scheduled Maturity Date. **In such circumstances, the relevant redemption amount of the Notes payable to investors in the Notes may be less than the principal amount of the Notes (and such value or amount may be zero)**.

Due to the operation of the terms relating to Cash Settlement (which is specified as the Settlement Method), there may be a considerable period of time following an Event Determination Date before the Notes are actually redeemed.

*Credit Derivatives Determinations Committees, Credit Derivatives Definitions and adherence to ISDA Protocol*

Credit Derivatives Determinations Committees (**Determinations Committees**) are committees established by ISDA which have the power to making binding decisions on critical issues such as whether a Credit Event or a Succession Event has occurred, which obligations of the Reference Entity are deliverable and whether an Auction should take place.

In making any determination, the Determinations Committees owe no duty to any investors in the Notes.

Investors should understand the role of the Determinations Committees and how their determinations may affect the Notes. Further information about the Determinations Committees may be found at *www.isda.org/credit*.

There may be differences between the terms and conditions of the Credit Linked Notes and the definitions and provisions of the 2014 ISDA Credit Derivatives Definitions (as supplemented and amended from time to time). Consequently, investing in Credit Linked Notes is not equivalent to investing in a credit default swap that incorporates the 2014 ISDA Credit Derivative Definitions.

Prospective investors should note that the credit derivatives market has evolved over time and is expected to continue to change. ISDA may from time to time publish further or alternative documents or protocols that may, without limitation, set out an alternative settlement, valuation method and/or operation or application of determinations made by the Determinations Committees in relation to any Reference Entity.

The Calculation Agent may from time to time amend any provisions of the Notes to incorporate further or alternative documents published by ISDA with respect to the settlement of credit derivative transactions and/or the operation or application of determinations by the Determinations Committees which the Calculation Agent and the Issuer determine in a commercially reasonable manner are necessary to reflect market practice for credit derivative transactions. There can be no assurance that changes to such terms will generally be predictable or favourable to the Issuer or investors in the Notes.

Prospective investors should also note that the Issuer and/or its affiliates may be a member of the relevant Determinations Committees and no assurance can be given as to how the Issuer and/or its affiliates will vote in connection with any matter to be determined by the Determinations Committees and the Issuer and/or its affiliates are not required to vote in a manner which is consistent with the interests of investors in the Notes and they may vote in a manner which is adverse to the interests of investors in the Notes.

*Restructuring*

Where Restructuring has been specified as a Credit Event and if a Restructuring Credit Event occurs, the Issuer and the Calculation Agent may exercise certain discretions and/or make certain determinations, which may adversely affect the value and return on the Notes. Furthermore, more than one Credit Event may occur in the event that a Restructuring Credit Event occurs in respect of the Reference Entity, in which case, the Notes will be redeemed in part following each such Credit Event.



MWB10 / 77

*Risk of Succession Events*

Prospective investors should note that a Reference Entity to which the Notes are referenced may change from time to time as a result of the occurrence of any Succession Events (such as a merger, de-merger or spin-off) and that more than one successor Reference Entity may be determined as a result of any such Succession Event.

If more than one successor Reference Entity is determined as a result of any such Succession Event, the terms and conditions of the Notes will be adjusted, without the consent of Noteholders, to reflect the fact that there will be multiple Reference Entities.

The successor Reference Entity or Reference Entities could also have a different, and worse, credit rating (if any) than the predecessor Reference Entity.

The Calculation Agent is responsible for making determinations as to whether a Succession Event has occurred, provided that the Calculation Agent shall not make any such determination if, at the time of determination, ISDA or the DC Secretary has publicly announced that the relevant Determinations Committee has Resolved that there is no Successor based on the relevant succession to Relevant Obligations. The Calculation Agent is entitled, in its sole and absolute discretion (if, where applicable, the relevant determination has not already been made by the relevant Determinations Committee) to make additional determinations and adjustments to the terms and conditions of the Notes relating to, connected with, or as a result of, a Succession Event. Accordingly, the applicable terms and conditions of the Notes may be amended and restated to reflect the effect of a Succession Event without the consent of the Noteholders.

*Cash Settlement*

Cash Settlement is the specified Settlement Method.

The Cash Settlement Amount shall be an amount to be determined by the Calculation Agent according to the formula as set out in this Term Sheet, taking into account, among others, Hedging Costs and the Final Price of the Reference Obligation. The Final Price is determined by the Calculation Agent, who may make such determination with reference to the amount in cash actually received by the Issuer arising from the redemption or disposal of the Reference Obligation.

Prospective investors should be aware that the **Cash Settlement Amount, in the worst case scenario, may be zero**.

For example, if the Calculation Agent determines that (i) the Issuer has not received any proceeds from the Reference Entity following a notice of the occurrence of an Event of Default (as defined under the terms of the Reference Obligation) or declaring all amounts payable under the Reference Obligation to be due and payable; or (ii) the Issuer is unable for any reason to dispose of, sell or liquidate the Deliverable Obligation (a refusal or failure by the Reference Entity to effect and complete a redemption or repurchase of the Deliverable Obligation being conclusive evidence of such inability), the Cash Settlement Amount may be determined by the Calculation Agent to be zero.

In such cases, the Noteholder shall lose the principal amount invested into the Notes and not receive any Interest Amount.

*The occurrence of certain events prior to the Trade Date may affect the value of the Notes*

Unless "Credit Event Backstop Date" is not specified as being applicable in the applicable Pricing Supplement, prospective investors should note that, despite the fact that interest accrues on the Notes only from the Interest Commencement Date, the exposure to the risks of the Reference Entity includes exposure in the period from and including the Credit Event Backstop Date in respect of the Reference Entity (which may occur up to 60 calendar days prior to the Trade Date) to the Issue Date and therefore the principal payable in respect of the Notes may be reduced as a result of the occurrence of an Event Determination Date notwithstanding that the relevant Credit Event occurred prior to the Issue Date of the Notes and that no interest was paid under the Notes in respect of the period prior to the Interest Commencement Date. Prospective investors should be aware that such an occurrence shall not discharge them from their obligation to purchase the Notes on or around the Issue Date.

Similarly, for Succession Events the look-back period is 90 calendar days and it is therefore possible that the Notes could be affected by a Succession Event that took place prior to the Trade Date.

**MWB10 / 78**