**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| In re Application of TECHTERYX LTD.,     ) <br>                   ) <br>         Applicant,       ) <br>                   ) <br> FOR AN ORDER TO TAKE     ) <br> DISCOVERY FOR USE IN FOREIGN    ) <br> PROCEEDINGS PURSUANT TO     ) <br> 28 U.S.C. § 1782.           ) | Case No.  5:26-mc-00004-R |

<u>**RESPONDENTS' MOTION TO VACATE EX PARTE ORDER OR QUASH
SUBPOENAS AND MEMORANDUM OF LAW IN SUPPORT**</u>

Respondents Aria Commodities-USA, LLC ("Aria USA"), Aria Commodities
Americas LLC ("Aria Americas"), and Lane Walker respectfully move this Court under
Federal Rule of Civil Procedure 60(b) for an Order vacating the April 10, 2026 Order [Doc.
No. 12] granting Applicant Techteryx Ltd.'s ("Techteryx") *ex parte* Application for an
Order to Conduct Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782
[Doc. No. 1].  In the alternative, Respondents seek to quash the six Subpoenas pursuant to
Federal Rule of Civil Procedure 45(d)(3). As shown herein, the statutory jurisdictional
requirements for Section 1782 are not satisfied, and even if they were, the Court should
use its discretion to vacate the Order permitting discovery because the *Intel* factors weigh
against the requested discovery.

**BACKGROUND**

Techteryx lays out its version of the factual background of this matter in great detail
in its Memorandum in support of its § 1782 Application. *See* Am. Mem. L. Supp. Appl.
Order Conduct Discovery ("Am. Mem. L. Supp. Discovery") 1–19 [Doc. No. 8].

Respondents note that much of Techteryx's factual background is incorrect or omits key facts. Briefly, Respondents highlight the essential parties for purposes of this Motion.

Techteryx's Application stems from a dispute regarding TrueCoin, a cryptocurrency, and the allegedly unlawful diversion of $456 million of TUSD Reserves to Aria Commodities DMCC ("Aria DMCC"). Respondents are Lane Walker, a businessman who resides in Edmond, Oklahoma; Aria Commodities-USA, LLC ("Aria USA"), a limited liability company organized in Kansas with its principal place of business in Edmond, Oklahoma; and Aria Commodities Americas LLC ("Aria Americas"), an LLC organized in Kansas with its principal place of business in Edmond, Oklahoma.

**ARGUMENT**

## I.    Legal Standards

### A.  28 U.S.C. § 1782.

"Under 28 U.S.C. § 1782, a district court may order a person residing or found within its district to produce documents or testimony for use in a foreign legal proceeding, unless the disclosure would violate a legal privilege." *In re Risenhoover*, No. CIV-12-0540-D, 2012 WL 5513712, at *1 (W.D. Okla. Nov. 14, 2012). The applicant bears the burden of establishing that the jurisdictional requirements of Section 1782 are satisfied. *See, e.g.*, *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 55 F.4th 469, 475 (5th Cir. 2022); *In re Schlich*, 893 F.3d 40, 49 (1st Cir. 2018). To obtain an order to conduct discovery, the applicant must satisfy the threshold statutory requirements: "(1) the discovery is sought from a person residing in the district of the court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a

foreign or international tribunal or an 'interested person.'" *In re Risenhoover*, 2012 WL 5513712, at \*1.

If the three jurisdictional requirements are met, the court must then consider the four discretionary factors articulated by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), which are:

1. Whether the evidence sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent section § 1782 aid.

2. The nature of the foreign tribunal, the character of the foreign proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance.

3. Whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States.

4. Whether the request is unduly intrusive or burdensome.

*SPS Corp I, Fundo de Investimento em Direitos Creditorios Nao Padronizados v. Gen. Motors Co.*, 110 F.4th 586, 591–92 (3d Cir. 2024) (citation modified). "[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Intel Corp.*, 542 U.S. at 264. In other words, "even if all of the statutory requirements are met, the district court may still deny the discovery request if it finds that the weighing of the *Intel* factors favors denial." *In re Schlich*, 893 F.3d at 51. "[A] party who relies on a 'blanket assertion' or does not properly substantiate its contentions runs the risk of not persuading the court to exercise its discretion in its favor." *Id.* at 50.

Moreover, "district courts must be alert for potential abuses that would warrant a denial of an application" such as where the applicant is "seek[ing] discovery in a federal

3

district court that it could obtain in the foreign jurisdiction, thus gratuitously forcing his opponent to proceed in two separate court systems; the inference would be that the party seeking U.S. discovery was trying to harass his opponent." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011).

Though *ex parte* applications under Section 1782 are permissible, *see In re Techteryx Ltd.*, No. MC-26-04-R, 2026 WL 973287, at *1 n.1 (W.D. Okla. Apr. 10, 2026), adversarial testing of such applications is critical to ensure our American justice system's policy of allowing broad discovery is not abused by foreign litigants on a fishing expedition. As the Fifth Circuit recently held, disallowing "a full adversary response to the propriety of the § 1782(a) application actually runs afoul of *Intel*, which admonished district courts to '*ensure an airing* adequate to determine what, if any, assistance is appropriate.'" *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 55 F.4th 469, 475 (5th Cir. 2022) (emphasis added) (quoting *Intel*, 542 U.S. at 266).

Here, Respondents challenge the information and documents used by Techteryx to support its Section 1782 Application and therefore bring a motion to vacate in addition to a motion to quash the subpoenas.

**B. Motion to Vacate Order Pursuant to Federal Rule of Civil Procedure 60(b).**

To decide a motion to vacate under Section 1782, the court must first consider the jurisdictional requirements enumerated in the statute. *See Amazon.com, Inc. v. Nokia of Am. Corp.*, No. CV 24-493-GBW, 2025 WL 220301, at *4 (D. Del. Jan. 16, 2025). If the court reaffirms that the applicant met the statutory requirements, it then considers whether it appropriately weighed the *Intel* factors. *Id.* "A Section 1782 order should be vacated if a

4

court determines that either the statutory factors were not met or that it did not appropriately exercise its discretion in view of the four discretionary *Intel* factors." *Id.*

### C. Motion to Quash Subpoenas Pursuant to Federal Rule of Civil Procedure 45(d)(3)

Even after a district court grants a Section 1782 application, as was the case here, respondents can object to discovery by moving to quash the subpoenas pursuant to Rule 45(d)(3). On a timely motion, a district court *must* quash or modify a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv).

Whereas it is the applicant (*i.e.*, Techteryx) who must carry the burden to obtain discovery under Section 1782, it is the subpoenaed parties (*i.e.*, Respondents) who bear the burden on a motion to quash. *See In re Appl. of Stephen Shefsky for an Ord. to Take Disc. for Use in Foreign Proc. Under 28 U.S.C. § 1782*, No. 2:23-CV-00633-JCM-BNW, 2024 WL 2275215, at \*2 (D. Nev. May 20, 2024).

## II.    Techteryx Failed to Satisfy the Jurisdictional Requirements of Section 1782.

It is Techteryx's burden to prove that all of the jurisdictional requirements of Section 1782 are satisfied, but it has failed to meet that burden. Respondents concede that the third jurisdictional requirement is met—Techteryx is an "interested person" within the meaning of Section 1782. Respondents also acknowledge that the first jurisdictional requirement is met because Walker resides in this district, and both Aria USA and Aria Americas are

LLCs with their principal place of business in this district. *See In re Fialdini*, No. 21-MC-0007-WJM-NYW, 2021 WL 411105, at \*4 (D. Colo. Feb. 5, 2021). However, Respondents contend that service of the subpoenas to Aria USA and Aria Americas was improper, and therefore those subpoenas should be quashed. *See infra* § III.B.

As for the second jurisdictional requirement, Techteryx has not shown that the discovery is for use in a foreign proceeding before a foreign or international tribunal. Accordingly, the Court's Order granting Techteryx's Application should be vacated.

### A. Techteryx Has Not Shown That the Information Sought is For Use in Proceedings Before a Foreign Tribunal.

Techteryx attested on April 1, 2026 that it "plans to initiate in the near term" proceedings in the General Division of the High Court of the Republic of Singapore. *See* Lim Decl. ¶ 2 [Doc. No. 4]; *see also* Am. Mem. L. Supp. Discovery 17 [Doc. No. 8] ("The preparation of the Singapore Litigations is well underway, and Techteryx expects those proceedings to begin in the near term."). Though a proceeding in a foreign tribunal does not necessarily need to be pending or even imminent to satisfy § 1782's jurisdictional requirement, it does need to be "within reasonable contemplation." *Intel Corp.*, 542 U.S. at 259. The Second Circuit has interpreted this requirement to mean that "[a]t a minimum, a § 1782 applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 100 (2d Cir. 2020). "In other words, the applicant must have more than a subjective intent to undertake some legal action, and instead must provide some objective indicium that the action is being contemplated."

*Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 123 (2d Cir. 2015). Indeed, some circuit courts have held that "the district court must insist on reliable indications of the likelihood that proceedings will be instituted within a reasonable time" in order "to guard against abuse of section 1782." *In re Letter of Request from Crown Prosecution Serv. of United Kingdom*, 870 F.2d 686, 692 (D.C. Cir. 1989); *see also Certain Funds*, 798 F.3d at 124 (affirming district court's finding that "the anticipated proceedings were not within reasonable contemplation" where five years had elapsed between the discovery of fraud and the filing of the § 1782 application).

Techteryx has failed to make the showing that the information sought from Respondents is "for use" in the "Singapore Litigations." Techteryx has been aware of perceived irregularities related to the TUSD Reserves since at least April 2023 when it "engaged a forensic financial investigation firm to investigate the Aria entities and the purported investment of the TUSD Reserves." Am. Mem. L. Supp. Discovery 10 [Doc. No. 8]. Respondents are not naïve as to the significant amount of time it takes to properly investigate claims and initiate litigation, but on the record shown, the "Singapore Litigations" appear to be mere speculation—particularly in light of the fact that other litigation is already ongoing. *Cf. In re Newbrook Shipping Corp.*, 31 F.4th 889, 898 (4th Cir. 2022) ("Among other threshold requirements, the requested discovery must be for use in a reasonably contemplated, non-speculative proceeding.").

In the past three years, Techteryx has already initiated or otherwise participated in other proceedings in foreign tribunals regarding the allegedly misappropriated TUSD Reserves, including:

- February 3, 2023 — Techteryx commenced proceedings in the High Court of the Hong Kong Special Administrative Region with Claim No. HCA 161/2023 against Aria DMCC and Aria CFF (among others). *See* May 19, 2025 Reasons for the Order of H.E. Justice Michael Black KC, DIFC Claim No. DEC 001/2025 ¶ 7 [Doc. No. 5-24].

- November 17, 2023 — TrueCoin commenced two arbitrations against Techteryx in the Singapore International Arbitration Centre ("SIAC"). *See* **Ex. 1**, *TrueCoin LLC v. Techteryx, Ltd* [2024] SGHC 296 (General Division of the High Court of Singapore, Nov. 29, 2024).

Additionally, Techteryx has submitted a creditor claim in the Chapter 11 bankruptcy proceedings of TrueCoin and its affiliates, as well as a notice of intent to subpoena FTX, both in the United States Bankruptcy Court for the District of Delaware. *See, e.g.*, **Ex. 2**, Notice of Intent to Serve Subpoena of FTX Recovery Trust, *In re FTX Trading Ltd.*, No. 22-11068-KBO (Bankr. Del. Mar. 31, 2026), Dkt. No. 34996; **Ex. 3**, Motion of Creditor Techteryx Ltd. for the Appointment of a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104, *In re Archblock LLC*, No. 26-10152 (Bankr. Del. Mar. 30, 2026), Dkt. No. 155.

In Techteryx's own words, the alleged misappropriation of the TUSD Reserves "has resulted in numerous litigations and arbitrations around the world . . . as well as a Securities and Exchange Commission ('SEC') investigation and enforcement action." *See* **Ex. 3**, Motion of Creditor Techteryx for Appointment of a Chapter 11 Trustee, *In re Archblock LLC* (emphasis added). Techteryx attests that it intends to use the discovery sought from Walker, Aria USA, and Aria Americas only in the anticipated Singapore Litigations. But the fact that Techteryx is already engaged in *numerous* litigations and arbitrations—both in the United States and abroad—raises doubt as to whether Techteryx is improperly invoking § 1782 to obtain information for use in other foreign and domestic proceedings.

8

Compounding that doubt is the fact that Techteryx has already shown that it is willing to use materials obtained in discovery beyond the parameters allowed by court order. In 2023, Techteryx brought claims against Aria DMCC (and others) in the Dubai International Financial Centre ("DIFC") Digital Economy Court ("DEC"). On October 17, 2025, H.E. Justice Michael Black KC issued an Order specifying the permissible uses of information and documents obtained by Techteryx from Aria DMCC:

> [Techteryx] has permission to use documents, witness evidence (including affidavits, witness statements, and their exhibits) and information disclosed or provided by or on behalf of [Aria DMCC] in Claim No. DEC-001-2025 for the purposes of the Relevant Proceedings.

**Ex. 4**, Oct. 17, 2025 Order of H.E. Justice Michael Black KC, DIFC Claim No. DEC 001/2025 ¶ 2(b).  As used in the Order, "Relevant Proceedings" includes:

(1) the proceedings before the High Court of the Hong Kong Special Administrative Region under Claim Numbers HCA 161/2023 and HCA 1906/2023 and before the Singapore International Arbitration Centre Case Number 602/2023;[1]

(2) civil proceedings in the United States in relation to the recovery of moneys transferred by the First Defendant directly or indirectly to FTX;

(3) arbitration proceedings being brought by the Claimant before the Singapore International Arbitration Centre against TrueCoin LLC and Mr Christian Alexander Boehnke De Lorraine-Elbeuf (also known as Alex de Lorraine);

(4) proceedings in the Cayman Islands in relation to petitions for the winding up of Aria Commodity Finance Fund (the "Fund") and for the appointment of liquidators in relation to the Fund; and

---

[1] "Relevant Proceedings" was defined in Justice Black's May 19, 2025 Reasons for the Order, DIFC Claim No. DEC 001/2025 ¶ 12(2) [Doc. No. 5-24]. Upon motion from Techteryx to allow other collateral uses of the discovery materials, Justice Black expanded the definition of "Relevant Proceedings" in his Order issued on October 17, 2025.

(5) assisting with the enquiries of and investigations by government agencies concerning onward dealings with any of the moneys received by the First Defendant from Legacy Trust Company and First Digital Trust Limited or their traceable proceeds.

*Id.* ¶ 2(a)(i)–(iv). "[Techteryx] <u>will not without the permission of the Court use any information obtained</u> as a result of this order for the purpose of <u>any civil or criminal proceedings</u>, either in the DIFC <u>or in any other jurisdiction</u>, other than for the Relevant Proceedings." May 19, 2025 Reasons for the Order of H.E. Justice Michael Black KC, DIFC Claim No. DEC 001/2025 ¶ 12(3) [Doc. No. 5-24] (emphasis added).

Techteryx's § 1782 Application does not fall into any of the categories of Relevant Proceedings, nor has Techteryx provided evidence that it sought and obtained permission from Justice Black prior to including materials and information obtained in the DIFC DEC proceeding. And yet, Techteryx attached exhibits to the Declaration of its Director, Li Jinmei, at least five of which were indisputably obtained in the DIFC DEC proceeding, including private messages and four affidavits created specifically for the DIFC DEC proceeding.[2] *See generally* Declaration of Li Jinmei in Support of Applicant's Application Pursuant to 28 U.S.C. § 1782 [Doc. No. 5].

Techteryx has demonstrated that it is willing to go beyond the bounds of court-imposed discovery restrictions and has not shown that the discovery sought from

---

[2] Respondents identified the following documents that were filed with this Court in violation of the DIFC Court's collateral use restrictions and/or analogous collateral-use restrictions from other foreign tribunals: (1) Second Affidavit of MWB, Exhibit 7 [Doc. No. 5-7]; (2) July 8, 2021 messages between Maria and ADL, Exhibit 13 [Doc. No. 5-13]; (3) First Affidavit of MWB, Exhibit 15 [Doc. No. 5-15]; (4) Third Affidavit of MWB, Exhibit 16 [Doc. No. 5-16]; and (5) Fourth Affidavit of MWB, Exhibit 26 [Doc. No. 5-26].

10

Respondents is indeed "for use" in the "Singapore Litigations." Because Techteryx has not satisfied the threshold jurisdictional requirements of 28 U.S.C. § 1782, the Court should vacate its April 10, 2026 Order [Doc. No. 12].

## III. Even if the Court Finds That § 1782's Jurisdictional Requirements Are Met, the Court Should Nonetheless Vacate the Order and Quash the Subpoenas.

### A. The *Intel* Factors Weigh Against Allowing Discovery

The first *Intel* factor that the Court must consider is "whether the person from whom discovery is sought is a party to the foreign proceeding, in which case 'the need for § 1782(a) aid generally is not as apparent' because a 'foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence.'" *In re Schlich*, 893 F.3d at 47 (quoting *Intel Corp.*, 542 U.S. at 264). Techteryx states that it "does not anticipate naming Respondents as defendants in the Singapore Litigations." Am. Mem. L. Supp. Discovery 22 [Doc. No. 8] (citing Lim Decl. ¶¶ 14–15 [Doc. No. 4]). This assertion, however, belies the fact that Techteryx's claims in the "Singapore Litigations" are premised "on the Aria entities' disregard of corporate formalities in shifting funds between those entities." *Id.* at 23. According to Techteryx, the "Aria entities" include Walker, Aria USA, and Aria Americas. *Id.* at 2 ("The Aria USA Entities, together with their principal Walker, comprise the U.S. arm of the Aria entities. . . ."). To the extent Techteryx intends to pursue its theory that certain parties "habitually disregarded the Aria entities' corporate formalities," *id.* at 18, Techteryx would likely need to include Respondents as parties in the Singapore Litigations. Techteryx has not clearly shown that the first *Intel* factor supports the requested discovery; at best, the first *Intel* factor is neutral.

11

Respondents have no authoritative proof that the High Court of Singapore would reject a U.S. federal court's judicial assistance, and therefore, the second *Intel* factor regarding receptivity of the foreign tribunal favors Techteryx.

The third *Intel* factor weighs against the requested discovery. Under the third *Intel* factor, the Court must consider "whether the request 'conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States.'" *In re Schlich*, 893 F.3d at 47 (quoting *Intel Corp.*, 542 U.S. at 265). "In the context of § 1782 and the third *Intel* factor, circumvention occurs where the applicant uses a § 1782 application to avoid measures that are *intended* to restrict certain means of gathering or using evidence." *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 153 (2d Cir. 2022). As discussed above, Techteryx has already circumvented the DIFC Court's proof-gathering restrictions by violating Justice Black's Order regarding collateral use of information and documents. Therefore, the third *Intel* factor strongly favors Respondents.

The fourth and final *Intel* factor is "whether the discovery request is 'unduly intrusive or burdensome.'" *Fed. Republic of Nigeria*, 27 F.4th at 159 (quoting *Intel Corp.*, 542 U.S. at 265). Here, that factor weighs strongly in Respondents' favor.

*First*, the subpoenas to Aria USA and Aria Americas seek information from before those entities even existed. Techteryx asserts that its subpoenas are "narrowly tailored to seek evidence relevant to the Singapore Litigations" and that it "tailored the timeframe for which it seeks information—April 1, 2019, through the present." Am. Mem. L. Supp. Discovery 23, 25 [Doc. No. 8]. But a subpoena that requests information from an entity predating that entity's existence is not narrowly tailored. Aria Americas was founded on

September 8, 2021, and Aria USA was founded on December 11, 2020. *See* **Ex. 5**, Aria USA LLC Articles of Organization; **Ex. 6**, Aria Americas LLC Articles of Organization. These LLCs did not exist when many of the allegedly fraudulent transactions occurred, and therefore reveal Techteryx's Application to be nothing more than a fishing expedition. Further, Techteryx has shown no transactional nexus between the Respondents and the proposed Singapore defendants and has conceded that they will not be named therein.

*Second*, the requests themselves contain "omnibus" phrases that are routinely struck down by district courts for being too broad. For example, Document Request No. 8 seeks "<u>All</u> Documents and Communications that <u>concern or relate in any way</u> to payments, assets, or Investments transferred to or received by the Aria USA Entities from Aria DMCC or any Other Aria Entities that concern or relate to the TUSD Reserves." *E.g.*, Document Subpoena to Walker 9 [Doc. No. 1-2]. Requests for documents must be stated with "reasonable particularity," Fed. R. Civ. P. 34(b)(1)(A), and courts often find that all-encompassing language, like that found in Document Request No. 8, does not meet Rule 34's particularity requirement. As another example, Document Request No. 11 seeks:

> <u>All</u> Documents and Communications that <u>concern or relate in any way</u> to payments or <u>any form</u> of compensation paid by the Aria USA Entities or the Other Aria Entities to FDT, Legacy, Crossbridge, Finaport, or Glass Door that <u>concern or relate in any way</u> to the TUSD Reserves, Investments funded in whole or in part by the TUSD Reserves, or Techteryx.

*See, e.g.*, Document Subpoena to Walker 9 [Doc. No. 1-2]. Courts in the Tenth Circuit are clear that the "reasonable particularity" requirement "should cause counsel to think at least twice about issuing a document request for 'all documents' that include communications 'related to' and 'regarding any' of a long series of items. . . . [S]erving such broad requests

13

fails Rule 34's 'reasonable particularity' requirement." *Schmelzer v. IHC Health Servs., Inc.,* No. 2:19-CV-00965-TS-JCB, 2022 WL 16646456, at *4 (D. Utah Feb. 10, 2022); *see also Leisure Hosp., Inc. v. Hunt Props., Inc.*, No. 09-CV-272-GKF-PJC, 2010 WL 3522444, at *3 (N.D. Okla. Sept. 8, 2010).

The information and documents sought by Techteryx is overbroad and unduly burdensome to Respondents, meaning that the fourth *Intel* factor weighs in Respondents' favor. On balance, the four discretionary *Intel* factors weigh in favor of Respondents and against Techteryx's § 1782 Application to Conduct Discovery. Accordingly, the Court's Order granting the Application should be vacated and the subpoenas issued pursuant to the Court's Order should be quashed. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv) (recognizing that, on timely motion, a court *must* quash a subpoena that "subjects a person to undue burden.").

### B. The Subpoenas to Aria USA and Aria Americas Should Be Quashed for Improper Service.

Techteryx served all six Subpoenas on Lane Walker at his residence in Edmond, Oklahoma. *See* Proofs of Service [Doc. Nos. 13–21]. In so doing, Techteryx either intentionally or negligently misrepresented to the Court that Lane Walker is authorized to accept service of process for Aria USA and Aria Americas.

Federal Rule of Civil Procedure 45 governs service of a subpoena and "requires delivering a copy to the named person." Fed. R. Civ. P. 45(b)(1). Where the "named person" is an entity (such as an LLC), though, service must be effected on the entity's proper agent. Rule 4(h)(1)(B) provides that service on an LLC can be effectuated "by delivering a copy of the summons and of the complaint to an officer, a managing or general

14

agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." *Id.* 4(h)(1)(B); *see also In re Newbrook Shipping*, 31 F.4th at 896–97 (applying Rule 4(h) to determine if service of subpoena on corporation was proper). The majority view among courts is that delivery of a subpoena requires personal service, meaning that it "must be directly delivered by a process server personally." *In re Newbrook Shipping*, 31 F.4th at 897 n.9.

Here, Techteryx provided outdated data from the Kansas Secretary of State to support its request to serve subpoenas for Aria USA and Aria Americas on Walker. *See* Aria Americas Information Report, Exhibit 1 [Doc. No. 5-1] (showing information as of May 16, 2025); Aria USA Information Report, Exhibit 2 [Doc. No. 5-2] (showing information as of April 24, 2024). Lane Walker resigned as the resident agent for Aria USA and Aria Americas as of October 23, 2025. *See* **Ex. 7**, Kansas Secretary of State Certificate of Amendment, Resignation of Resident Agent Without Appointing a Successor. A new resident agent and registered office for Aria USA and Aria Americas was filed with the Kansas Secretary of State on December 8, 2025—four months before Techteryx filed its Application with this Court. *See* **Ex. 8**, Aria USA Change of Registered Agent; **Ex. 9**, Aria Americas Change of Registered Agent. The up-to-date information on the Kansas Secretary of State website does *not* show that Lane Walker is authorized to accept service of process on behalf of Aria USA or Aria Americas. *See* **Ex. 10**, Aria USA General Information; **Ex. 11**, Aria Americas General Information. Accordingly, service of the Aria USA and Aria Americas subpoenas on Lane Walker was improper.

15

## CONCLUSION

For the foregoing reasons, the Court should grant Respondents Lane Walker, Aria Americas, and Aria USA's motion to vacate the Court's April 10, 2026 Order [Doc. No. 12] granting Techteryx's *Ex Parte* Application for an Order to Conduct Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782 [Doc. No. 1].  In the alternative, the Court should quash the six Subpoenas pursuant to Rule 45(d)(3).


 DATED: May 18, 2026                      Respectfully submitted,



                                          *s/Amelia Rae Ridgeway*
                                          Andrew E. Henry, OBA #32009
                                          Amelia Rae Ridgeway, OBA #36905
                                          *Attorneys for Respondents*
                                          CROWE DUNLEVY
                                          A Professional Corporation
                                          Braniff Building
                                          324 N. Robinson Ave.
                                          Suite 100
                                          Oklahoma City, OK 73102-8273
                                          (405) 235-7700
                                          (405) 239-6651 (Facsimile)
                                          andrew.henry@crowedunlevy.com
                                          amy.ridgeway@crowedunlevy.com

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of May, 2026, I electronically transmitted the foregoing document to the Court Clerk using the ECF system of filing, which will transmit a Notice of Electronic Filing to the following ECF registrants:

Andrew William Amend
CAHILL GORDON & REINDEL LLP
32 Old Slip
10005
New York, NY 10005
212-701-3734
aamend@cahill.com

Frederick Jewel Glasgow
CAHILL GORDON & REINDEL LLP
32 Old Slip
10005
New York, NY 10005
212-701-3341
fglasgow@cahill.com

Gregory Stephen Mortenson
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
212-701-3708
gmortenson@cahill.com

John Strathern MacGregor IV
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
jmacgregor@cahill.com

Samson Aaron Enzer
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
212-701-3000
senzer@cahill.com

Dwain Jared Giddens
CONNER & WINTERS-OKC
211 N Robinson Ave
Suite 1700
Oklahoma City, OK 73102
405-272-5711
jgiddens@cwlaw.com

J Dillon Curran
CONNER & WINTERS-OKC
211 N Robinson Ave
Suite 1700
Oklahoma City, OK 73102
405-272-5711
dcurran@cwlaw.com

Matthew Austin Peace
CONNER & WINTERS LLP
211 N Robinson Ave
Ste 1700
Oklahoma City, OK 73102
405-272-5711
mpeace@cwlaw.com

**ATTORNEYS FOR APPLICANT TECHTERYX LTD.**

s/*Amelia Rae Ridgeway*

17